IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| AccuSource HR, Inc., a California corporation, | § § § | |
| Plaintiff, | § | |
| v. | § § | Case No. 24-cv-303 |
| Lone Star Holdings, LLC, d/b/a LSO; f/k/a Lone Star Overnight, LLC; and LSO, Inc.; | § § § § | |
| Defendants. | § § | |

## COMPLAINT

Plaintiff AccuSource HR, Inc. ("AccuSource") files this Original Complaint against Defendants Lone Star Holdings, LLC, d/b/a LSO and f/k/a Lone Star Overnight, LLC, and LSO, Inc. as follows:

## PARTIES

1.     AccuSource is a California corporation with its principal place of business in Phoenix, Arizona.

2.     Lone Star Holdings, LLC, d/b/a LSO and f/k/a Lone Star Overnight, LLC is a Delaware limited liability company with its principal place of business in Austin, Texas.

3.     LSO, Inc. is a Delaware corporation with its principal place of business in Plano, Texas.

4.     On information and belief, Lone Star Holdings and LSO, Inc. do business as Lone Star Overnight, or, as known locally in the regional courier service, "LSO."

5.      WeDo Logistics, LLC ("WeDo") is a Delaware limited liability company with its principal place of business in Austin, Texas.  WeDo is owned by Ocelot Capital Management, an Austin, Texas based firm.

6.      According to news reports, WeDo purchased certain interests in LSO on November 24, 2020.

**JURISDICTION AND VENUE**

7.      This court has diversity jurisdiction over this matter under 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and this is a dispute between citizens of different states.

8.      AccuSource is a citizen of Arizona and California.

9.      On information and belief, Andrew Townsend is a member of Ocelot Capital Management, LLC, which in turn, is the sole or principal member of WeDo. On information and belief, Mr. Townsend is a citizen of Austin, Texas. Additionally, on information and belief, all other natural members of Ocelot Capital Management and WeDo are Texas citizens. Therefore, on information and belief, WeDo is a citizen of Texas.

10.      On information and belief, WeDo is the sole member of Lone Star Holdings. Therefore, on information and belief, Lone Star Holdings is a citizen of Texas.

11.      LSO, Inc. is a citizen of Delaware and Texas.

12.      Despite diligent attempts to search public records to identify any additional members of Lone Star Holdings, WeDo, and Ocelot Capital Management, further information bearing on Defendants' citizenship is in Defendants' control.  Nevertheless,

on information and belief, the parties are completely diverse because Plaintiff is a citizen of Arizona and California, and Defendants are citizens of Delaware and Texas.

13.     This Court has personal jurisdiction over Defendants because they are citizens of Texas, their principal places of business are in Texas, and they have sold, distributed, marketed, and/or advertised their services in the State of Texas.

14.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because one or more defendants reside within the Western District of Texas and because each of the defendants is subject to personal jurisdiction in the Western District of Texas.

## FACTUAL BACKGROUND

15.     AccuSource is a company that knows how difficult it can be for companies to recruit quality talent.

16.     Founded in 1999, AccuSource has continuously invested in developing new technology to provide direct, consistent, and supportive client care, understanding that every business is unique and each client deserves customized solutions tailored to meet their specific needs.

17.     Thus, AccuSource strives to provide fast, cost-efficient, and compliant screening services unmatched in the industry, and AccuSource strives to partner with clients and serve as a valuable extension of their human resources, security, and risk management teams.

18.     As a part of these screening services, AccuSource provides its clients with technology to streamline human resource processes, such as consumer information,

consumer reports, investigative consumer reports, and background screenings of prospective employees.

19.    LSO is a regional parcel carrier.

20.    In June 2020, LSO and AccuSource[1] entered into a Proforma Screening Solutions Service Agreement (the "Agreement"). A true and correct copy of the Agreement is attached as Exhibit 1.

21.    LSO, through Lone Star Holdings, LLC, executed the Agreement on June 15, 2020. *See* Agreement at 11.

22.    AccuSource's predecessor-in-interest executed the Agreement on June 29, 2020. *Id.*

23.    The initial term of the Agreement was for 2 years, and automatically renewed each year on the anniversary of the effective date unless terminated by either party at least 60 days in advance. *Id.* ¶ 10.

24.    Under the Agreement, AccuSource agreed to provide to LSO services including consumer information, consumer reports, investigative consumer reports, and background screenings of LSO's prospective and current employees.

25.    Specifically, LSO opted into AccuSource's Client Direct – CBC & MVR Contractor Package, which provides SSN Locator/Trace, County Criminal Court Records,

---

[1] AccuSource is the successor-in-interest to the original signatory to the Agreement, LFL Enterprises LLC dba Proforma Screening Solutions.

a multi-state criminal record search and sex offender search, motor vehicle and driver records, an addition to certain drug tests. *See* Agreement, Addendum B.

26.     Under the Agreement, LSO agreed to "pay [AccuSource] nonrefundable fees and other charges and costs for the consumer information provided to" it. *See* Agreement, ¶ 8.

27.     LSO also agreed to pay AccuSource's invoices within 30 days from the invoice date. *Id.*

28.     The Agreement provides that accounts with invoices 30 days or more past due will be assessed an interest charge of 1.5% per month, or the maximum amount allowed by law, whichever is less. *Id.*

29.     LSO, pursuant to the Agreement, agreed that "[i]f the account goes to collection, [LSO] will pay all collection expenses, including attorneys' fees and court costs." *Id.*

30.     AccuSource provided all services to LSO as contemplated by the Agreement.

31.     In spite of AccuSource's performance, LSO has failed and/or refused to pay no less than 16 of AccuSource's invoices, beginning with an invoice dated November 30, 2021 in the amount of $58,940.92.

32.     The unpaid invoices are dated between November 30, 2021 and July 31, 2023, and are summarized as follows:

| Date | Due Date | Open Balance | 1.5% Interest per month | Interest Total |
|---|---|---|---|---|
| 11/30/2021 | 12/31/2021 | 58,940.92 | $884.11 | 19,303.15 |
| 12/31/2021 | 01/31/2022 | 57,222.37 | $858.34 | 17,853.38 |
| 06/30/2022 | 07/31/2022 | 6,396.24 | $95.94 | 1,416.77 |
| 07/31/2022 | 08/31/2022 | 7,647.93 | $114.72 | 1,575.47 |
| 08/31/2022 | 09/30/2022 | 12,959.14 | $194.39 | 654.44 |
| 09/30/2022 | 10/31/2022 | 17,189.86 | $257.85 | 868.09 |
| 10/31/2022 | 11/30/2022 | 17,186.92 | $257.80 | 867.94 |
| 11/30/2022 | 12/31/2022 | 26,704.66 | $400.57 | 1,348.59 |
| 12/31/2022 | 01/31/2023 | 30,515.86 | $457.74 | 1,541.05 |
| 01/31/2023 | 02/28/2023 | 5,135.26 | $77.03 | 259.33 |
| 02/28/2023 | 03/31/2023 | 6,423.16 | $96.35 | 642.32 |
| 03/31/2023 | 04/30/2023 | 10,838.15 | $162.57 | 921.24 |
| 04/30/2023 | 05/31/2023 | 29,055.40 | $435.83 | 2,019.35 |
| 05/31/2023 | 06/30/2023 | 17,889.53 | $268.34 | 974.98 |
| 06/30/2023 | 07/31/2023 | 8,029.91 | $120.45 | 313.17 |
| 07/31/2023 | 08/31/2023 | 1,155.49 | $17.33 | 27.15 |
| | TOTAL | $  313,290.80 | TOTAL | $   50,586.41 |

33.     AccuSource has made multiple demands for payment, but LSO has refused to pay AccuSource for the services AccuSource provided to LSO.

34.     As of July 31, 2023, LSO owed AccuSource no less than $363,877.21 for the services AccuSource provided to LSO.  LSO also owes additional interest and late fees which are continuing to accrue.

## CAUSES OF ACTION

### Count One – Breach of Contract

35.     AccuSource incorporates the foregoing allegations as if stated herein.

36.     The Agreement is a fully integrated, valid, and legally enforceable contract.

37.     AccuSource performed all its duties under the Agreement by providing the services requested by LSO.

38.     LSO has not paid AccuSource for those services.

39.     Each of the sixteen outstanding invoices is more than 30 days late.

40.     By failing to remit payment for AccuSource's services, LSO breached its obligations under the Agreement.

41.     As of the most recent accounting, AccuSource has suffered damages of $363,877.21 as a result of LSO's failure to remit payment for AccuSource's service under the Agreement.

42.     Thus, as a result of LSO's breach(es) of contract, LSO is liable to AccuSource in an amount to be proven at trial, and in no case, less than $363,877.21 plus additional interest, attorneys' fees, and costs.

**Count Two – Unjust Enrichment/Quantum Meruit**

43.     This cause of action is brought in the alternative to AccuSource's claim for breach of contract.

44.     AccuSource has furnished services to LSO, which have conferred a benefit upon and enriched LSO.

45.     LSO knew AccuSource expected to be paid for the services.

46.     LSO has not paid AccuSource for the services AccuSource furnished LSO.

47.    AccuSource expected to be paid a reasonable value for the services it provided to LSO and has not acted as a volunteer or intermeddler.

48.    LSO knew of the benefit it was obtaining from the services furnished by AccuSource, which is at least $363,877.21.

49.    LSO accepted, used, and retained the benefit of the services furnished by AccuSource, which is at least $363,877.21.

50.    If the Court concludes the Agreement is not a valid contract, AccuSource will lack a legal remedy for LSO's unjust enrichment.

51.    It would be inequitable to permit LSO to retain the benefit of AccuSource's service without compensating AccuSource.

52.    Thus, AccuSource is entitled to judgment in an amount to be proven at trial, but in no case less than $363,877.21 plus interest and attorneys' fees and costs to the extent permitted by law.

## Count Three – Promissory Estoppel

53.    This cause of action is brought in the alternative.

54.    LSO promised to pay AccuSource for services AccuSource would furnish for LSO's human resource needs.

55.    LSO should reasonably expect its promise to pay AccuSource to furnish services would cause AccuSource to furnish services to LSO.

56.    Relying on LSO's promise to pay for service, AccuSource furnished services to LSO.

57.    It was reasonable for AccuSource to rely on LSO's promise to pay it.

58.    It was foreseeable that AccuSource would rely on LSO's promise to pay it.

59.    AccuSource has been injured by its reliance on LSO's promise to pay it.

60.    AccuSource's injury amounts to at least $363,877.21.

61.    If AccuSource is not paid for the services it furnished LSO, it would be unjust.

62.    Thus, AccuSource is entitled to judgment in an amount to be proven at trial, but in no case less than $363,877.21 plus interest and attorneys' fees and costs to the extent permitted by law.

## JURY DEMAND

63.    AccuSource hereby demands a trial by jury on all claims and any other matters so triable.

## CONCLUSION AND PRAYER

64.    AccuSource respectfully requests that Defendants be cited to appear and answer herein and that, upon final trial, AccuSource be awarded judgment against Defendants for:

a.    monetary damages in an amount to be determined at trial, but not less than $363,877.21;

b.    pre-judgment and post-judgment interest at the highest rates allowed by law;

c.    reasonable and necessary attorney fees;

d.    costs of court; and

e.  such other and further relief, both general and special, at law and in equity, to which AccuSource may show itself to be justly entitled.

Dated: March 22, 2024                                  Respectfully submitted,


DORSEY & WHITNEY LLP

_____


    /s/ H. Joseph Acosta
**H. Joseph Acosta**
State Bar No. 24006731
acosta.joseph@dorsey.com
200 Crescent Ct, Suite 1600
Dallas, TX 75201
214 981-9900(main)
214 981-9901(facsimile)


**ATTORNEYS FOR PLAINTIFF**

## EXHIBIT 1



**THIS SERVICE AGREEMENT** ("Agreement") is made and entered into by and between LFL Enterprises LLC dba Proforma Screening Solutions ("PSS") and Lone Star Overnight **("Customer")** with its principal offices located at 6500 River Place Blvd., Building 2, Suite 105, Austin, TX 78730. PSS and Customer may be referred to herein individually as a "Party" and collectively as the "Parties". This Agreement will be effective on the date Customer orders any consumer information from PSS (the "Effective Date").

The Parties hereby acknowledge and agree to the following terms and conditions of this Agreement:

## 1. GENERAL

PSS strives to deliver accurate and timely "consumer information," including "consumer reports" and "investigative consumer reports," to assist Customer in making intelligent and informed decisions for a permissible purpose under applicable law. To this end, PSS assembles consumer information from a variety of sources, including without limitation databases maintained by consumer reporting agencies containing information from public records and other sources, governmental databases and repositories, other information databases and repositories, and internal and third-party researchers. Such information sources and resources are not maintained or controlled by PSS. PSS can be neither an insurer nor a guarantor that the information provided from these sources is absolutely accurate, current, error-free, or comprehensive in breadth or depth. PSS has in place reasonable procedures designed to respond promptly to claims of incorrect or inaccurate information in accordance with applicable law.

PSS will provide to Customer, consumer information, including consumer reports, and investigative consumer reports, and specifically background screening services.

## 2. CUSTOMER CERTIFICATION OF FCRA PERMISSIBLE PURPOSE(S)

Customer hereby certifies that all of its requests and procurement orders for consumer information from PSS will be made, and the resulting reports will be used, for the following federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., permissible purposes only:

> INDEPENDENT CONTRACTOR PURPOSES (Section 604(a)(3)(B). For independent contractor purposes including evaluating a consumer for independent contractor, where the consumer has given prior written permission, and for no other purpose.

## 3. CUSTOMER CERTIFICATION OF LEGAL COMPLIANCE

Customer hereby certifies that the consumer information it receives from PSS will not be used in violation of any federal, state or local law, including, but not limited to the federal FCRA and any other related state law or regulation. Customer accepts full responsibility for complying with all such laws and for using the consumer information it receives from PSS in a legally acceptable fashion.

If a consumer is subject to any adverse action based in whole or in part on the consumer information provided by PSS, Customer will comply with and provide all statutorily required notices identified in Section 615 of the federal FCRA and any other related state law, including without limitation providing the consumer with: a copy of the report; notice of the adverse action being taken; the name, address, and telephone number for PSS; notice that consumer is entitled to a free copy of the report from PSS and a right to dispute the record through PSS; notice that PSS did not make the decision to take adverse action and cannot provide the specific reasons why adverse action was taken; and a copy of a copy of the FTC's "A Summary of Your Rights Under the Fair Credit Reporting Act." Any consumer disputing any item of information provided by PSS in a report will be provided with the following PSS contact information:

Attn: Consumer Disputes
Proforma Screening Solutions
125 East Hirst Road, Ste 2C Purcellville, VA 20132

Customer Initials                              PSS Initials



(866) 276-6161

Customer further accepts full and sole responsibility for any and all consequences of use and/or dissemination of those products. Each item of consumer information, consumer report, or investigative consumer report will only be used for a one-time use and disclosure, with the exception of disclosure to the consumer about whom the consumer information or consumer report relates, will be limited to Customer's designated and authorized representatives and only to the extent necessary to use the PSS services provided hereunder in accordance with this Agreement. Customer will ensure that such designated and authorized representatives will not attempt to obtain consumer information or consumer reports on themselves, associates, or any other person except in the exercise of their official duties. Customer will have reasonable procedures for the fair and equitable use of consumer information and to secure the confidentiality of sensitive, personal, and private information. Customer will take precautionary measures to protect the security and dissemination of all consumer information including, restricting terminal access, utilizing passwords to restrict access to terminal devices, and securing access to, dissemination and destruction of, electronic and hard copy reports.

As a condition of entering into this Agreement, Customer certifies that prior to ordering any consumer information from PSS, Customer will have in place reasonable procedures designed to comply with all applicable local, state, federal, and international laws. Customer also certifies that for a period of six (6) years from the date a report was received from PSS it will retain a consumer's signed disclosure and authorization, and any related information, and will make such documents and information available to PSS upon request.

Customer has received a copy of the FTC's "A Summary of Your Rights Under the Fair Credit Reporting Act" 16 C.F.R. Part 601, Appendix A, Notice of Users of Consumer Reports (16 C.F.R. Part 601, Appendix C), and other applicable state notices, from PSS.

Customer acknowledges that the federal Fair Credit Reporting Act (FCRA) provides that any person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses may be fined under Title 18 of the United States Code or imprisoned not more than two (2) years, or both.

### A. Use of PSS Websites

In addition to all other Customer obligations, if Customer requests or makes any procurement order for consumer information via any PSS website, Customer will abide by any additional conditions that may be imposed to utilize the website, including without limitation: providing any required certifications electronically; providing any required or requested consumer disclosure, authorization, resume, employment, or lease/rental application, or other related consumer information electronically; and maintaining strict security protocols, policies, procedures, and controls to assure that only authorized users are able to access the PSS system, and only for permissible, proper, legal, and authorized purposes. Use of a PSS website also constitutes express agreement to the websites terms and conditions contained therein at the time of each use.

### B. PSS Audits

Customer will allow PSS to audit its records at any time, upon reasonable notice given. Customer will provide PSS copies of any requested signed consumer authorization within five (5) business days of any such request by PSS. Material defaults or breaches of this Agreement and/or violations of applicable law discovered by PSS may result in immediate suspension and/or termination of this Agreement and Customer's account, and legal action and/or referral to federal or state regulatory agencies.

### C. Independent Contractor Purposes

In addition to all other Customer obligations and certifications, Customer certifies that in accordance with Section 604 of the federal FCRA and any other applicable state law, prior to obtaining or causing any consumer report and/or investigative consumer report to be obtained for any independent contractor purpose, a clear and conspicuous disclosure, in a document consisting solely of the disclosure, will be made in writing to the consumer explaining that a consumer report and/or investigative consumer report may be obtained for independent contractor purposes. Customer further certifies that prior to obtaining or causing a consumer report and/or investigative consumer report to be obtained, the consumer will have authorized, in writing, the obtaining of the report by Customer.

If a consumer is denied as an independent contractor, or other adverse action is to be taken, based in whole or in part on the

Customer Initials                PSS Initials



information provided by PSS, prior to taking any adverse action Customer will provide to the consumer: a copy of the report, and a copy of the FTC's "A Summary of Your Rights Under the Fair Credit Reporting Act."

After the appropriate waiting period, Customer agrees to comply with and provide all statutorily required notices identified in Section 615 of the federal FCRA and any other related state law, including without limitation providing the consumer with: a copy of the report; notice of the adverse action being taken; the name, address, and toll-free telephone number for PSS; notice that consumer is entitled to a free copy of the report from PSS and a right to dispute the record through PSS; notice that PSS did not make the decision to take adverse action and cannot provide the specific reasons why adverse action was

taken; and a copy of a copy of the FTC's "A Summary of Your Rights Under the Fair Credit Reporting Act." Any consumer disputing any item of information provided by PSS in a report will be provided with the following PSS contact information:

> Attn: Consumer Disputes
> Proforma Screening Solutions
> 125 East Hirst Road, Ste 2C
> Purcellville, VA 20132
> (866) 276-6161

### D. Investigative Consumer Reports

In addition to all other Customer obligations and certifications, Customer certifies that in accordance with Section 606 of the FCRA and any other applicable state law, if it requests, procures, or causes to be prepared any investigative consumer report, it will clearly and accurately disclose to the consumer that an investigative consumer report including information as to the consumer's character, general reputation, personal characteristics, and mode of living, whichever are applicable. Such disclosure will be made in a writing, mailed, or otherwise delivered, to the consumer, not later than three (3) days after the date on which the report was first requested, and will include a statement informing the consumer of the consumer's right to know whether an investigative consumer report has been requested, by Customer and if an investigative consumer report has been requested, the right to request within a reasonable amount of time: a written disclosure of the nature and scope of the investigation requested; the name, address, and toll-free telephone number for PSS; and a copy of the FTC's "A Summary of Your Rights Under the Fair Credit Reporting Act." Customer will provide these disclosures to the consumer no later than five (5) days after the request for such disclosure is received from the consumer or such report was first requested by Customer from PSS, whichever is the later.

Any consumer requesting the name of the consumer reporting agency preparing or that prepared a consumer report and/or investigative consumer report will be provided with the following PSS contact information:

> Proforma Screening Solutions
> 125 East Hirst Road, Ste 2C
> Purcellville, VA 20132
> (866) 276-6161

### E. USDOT Drug Testing and Medical Review Officer Services

Customer will inform PSS whenever U.S. Department of Transportation regulations 49 CFR part 40 (USDOT regulations) are applicable to any drug test or medical review service provided by PSS. The Parties will comply with their respective and collective obligations under any applicable USDOT regulations.

### F. Motor Vehicle Records (MVRs)

In addition to all other Customer obligations and certifications, Customer hereby certifies that "motor vehicle records" and/or "driving records" ("MVRs") will only be ordered in strict compliance with the federal Driver Privacy Protection Act, 18 U.S.C. § 2721 et seq. ("DPPA") and any other applicable state law. No MVR or driving record will be ordered without first obtaining the

Customer Initials                    PSS Initials



written authorization and consent of the consumer, which will be provided to PSS upon request. Customer further certifies that it is a legitimate business and will use this information only in the normal course of business to obtain or verify required information relating to the holder of a commercial driver's license, to verify information provided by a consumer, or in connection with motor vehicle or driver safety. Customer will not transmit any data contained in the resulting MVR via the public internet, electronic mail, or any other unsecured means. Customer will obtain a consumer's authorization and consent on a state-specific form as may be required by a specific state and requested by PSS.

Some of the information provided by PSS may be "personal information," as defined in the DPPA, and may be regulated by the DPPA ("DPPA Data"). End-User will not obtain or use any DPPA Data provided by PSS in any manner that would violate the DPPA, or any similar state or local laws regulations or rules. Customer acknowledges and agrees that it may be required to certify the permissible use of DPPA Data at the time it requests information in connection with certain PSS services. In addition, Customer agrees it will recertify, in writing, the permissible uses of DPPA Data upon the request of PSS.

### G. GLBA Data

Some of the information provided by PSS may be "nonpublic personal information," as defined in the federal Gramm-Leach Bliley Act (15 U.S.C. § 6801 et seq.) and its implementing regulations (collectively, "GLBA"), and may be regulated by the GLBA ("GLBA Data"). Customer will not obtain or use GLBA Data provided by PSS, in any manner that would violate the GLBA, or any similar state or local laws, regulations, and rules. Customer acknowledges and agrees that it may be required to certify the permissible use of GLBA Data at the time it requests information in connection with certain PSS services. In addition, Customer agrees it will recertify, in writing, the permissible uses of GLBA Data upon request by PSS.

### H. Criminal Record Searches and National Criminal Database Checks

PSS recommends that any criminal record search minimally include county court criminal record searches, state criminal record database searches and/or checks (where available), federal court record database checks, and national criminal database checks, conducted on the consumer's current name and any and all former names, aliases, and AKAs, and wherever the applicant has lived, worked, and studied. PSS will not be held responsible or liable for any criminal record that exists in a court, law enforcement, or proprietary criminal record database that Customer did not include in its request or procurement order made to PSS, or that is not legally reportable by PSS under federal, state, or local consumer reporting law. Any request or procurement order for a national criminal record database search will require a separate verification of any criminal record found at the primary source of such record, and Customer will be responsible for the additional cost of any such primary source criminal record verification, including without limitation any applicable access fee charged by the source.

In the course of providing the consumer information requested by Customer, PSS may uncover active arrest warrants which are outstanding against a consumer. In these cases, PSS may be contacted by the law enforcement agency seeking the consumer. PSS will furnish to law enforcement any information contained within the consumer's file to assist in the apprehension of the consumer by law enforcement agencies. PSS will cooperate with a law enforcement agency's request that PSS not inform Customer or the consumer that this information was provided to the agency in order to prevent any potential adverse impact of such disclosure on the agency's consumer apprehension efforts.

### I. Consumer Credit Reports

Customer will not disclose to consumers or any third party any Credit Scores obtained from PSS, unless clearly required by law. Customer will request Scores only for Customer's exclusive use. Customer may store Scores solely for Customer's own use in furtherance of Customer's original purpose for obtaining the Scores. Customer shall not use the Scores for model development or model calibration and shall not reverse engineer the Score. All Scores provided hereunder will be held in strict confidence and may never be sold, licensed, copied, reused, disclosed, reproduced, revealed, or made accessible, in whole or in part, to any Person, except (i) to those employees of Customer with a need to know and in the course of their employment; (ii) to those third party processing agents and other contractors of Customer who have executed an agreement that limits the use of the Scores by the third party only to the use permitted to Customer and contains the prohibitions set forth herein regarding model development, model calibration, reverse engineering, and confidentiality; (iii) when accompanied by the corresponding reason codes, to the consumer who is the subject of the Score; (iv) to government regulatory agencies; or (v) as required by law. Additional approval and authorization, and execution of Consumer Credit Report EDD Business Types

Customer Initials                                    PSS Initials



Addendum are required before the following persons, entities and/or businesses may obtain access to credit reports or other credit bureau data products: private detectives, private detective agencies, private investigative companies, bail bondsmen, attorneys, law firms, credit counseling firms, security services, members of the media, resellers, financial counseling firms, credit repair clinics, pawn shops (except companies that do only title pawn), check cashing companies (except companies that do only loans, no check cashing), genealogical or heir research firms, dating services, massage or tattoo services, businesses that operate out of an apartment, individuals seeking information for their own private use, adult entertainment services of any kind, companies that locate missing children, companies that handle third party repossession, companies seeking information in connection with time shares, subscriptions companies, individuals involved in spiritual counseling, or persons or entities that are not a Customer or decision maker. Customer certifies that it is not any of the types of persons, entities, and/or businesses listed above, or that if it is it will not access credit reports or other credit bureau data products nor attempt to do so without first obtaining the additional required approval and authorization from PSS, and executing the required Consumer Credit Report EDD Business Types Addendum.

Before Customer will be allowed to access consumer credit report information, PSS requires that Customer provide one (1) of the following (if Customer is not publicly traded): 1) business license status from a government web site (please include entire web page print out); 2) business license, copy or documented verification; 3) documented corporation verification with state or federal government; 4) copy of Articles of Incorporation with proof of filing; 5) state and/or federal tax records originating from the state or federal government; 6) FDIC Certification; or 7) 501(c)(3) certificate for non-profit originations. If Customer is a publicly traded company, the following items are acceptable methods for verifying that the Customer is a bona fide entity: 1) documentation of ticker symbol information from trading website; and 2) certified copy of audited annual or quarterly statements submitted to the SEC.

### J. International Background Screening Services

International background screening services will generally be conducted through the services of third-party independent contractors and because of differences in foreign laws, language, and the manner in which foreign records are maintained and reported, and because these information sources and resources are not maintained or controlled by PSS, PSS can be neither an insurer nor a guarantor that the information provided from these sources is absolutely accurate, current, error-free, or comprehensive in breadth or depth. PSS will not be held responsible or liable for any criminal record that exists in a court, law enforcement or proprietary criminal record database that Customer did not include in its request or procurement order made to PSS, or that is not legally reportable by PSS under international, federal, state or local consumer reporting law. Customer hereby releases PSS from any and all liability whatsoever in connection with the information received as a result of request or procurement order made by Customer for any international background screening service from PSS.

### K. Adverse Action Notices

PSS provides sample consumer pre-adverse action and adverse action notices for Customer's convenience only. Customer is not required to utilize the sample notices provided by PSS and can modify the form and content of such notices or use their own notices in their entirety. The final form and content of any such notices is Customer's sole responsibility and PSS will not be held responsible or liable for their form or content. PSS recommends Customer consult with its own legal counsel regarding notice form and content. Customer may also request in writing that PSS send out pre-adverse and adverse action letters on Customer's behalf for an additional fee. If Customer requests or makes any procurement order for such adverse action services, Customer will be solely responsible for ensuring that PSS is notified when Customer requires such notices be sent to a consumer.

### L. Consumer Background Check Information Forms

PSS provides various consumer background check information forms both electronically and as paper forms. Such forms and their specific contents are necessary in order for PSS to properly prepare the consumer information, consumer reports, and investigative requested or procured by Customer. Such forms are intended to be used solely for the purpose of providing consumer information, including consumer reports and/or investigative consumer reports. Such documents were not created as, nor are they intended to be used as, employment, tenant/rental, or other application forms. PSS recommends Customer consult with its own legal counsel before using any of these forms as employment, tenant/rental, or other application forms, or in any way other than their intended purpose.

Customer Initials                    PSS Initials





PROFORMA SCREENING SOLUTIONS SERVICE AGREEMENT – INDEPENDENT CONTRACTOR

**M. Consumer Disclosures and Authorizations**

PSS provides sample consumer disclosures and authorizations for Customer's convenience only. While Customer is required to provide a consumer proper disclosure and obtain a proper authorization prior to requesting or making a procurement order for any consumer information, Customer is not required to utilize the sample disclosures and authorizations provided by PSS.

Customer can modify the form and content of the sample disclosures or authorizations, or use their own disclosures and authorizations in their entirety. The final form and content of any such disclosure and authorization is the Customer's sole responsibility and PSS will not be held responsible or liable for their form or content. PSS recommends Customer consult with its own legal counsel regarding notice form and content. Customer may also request in writing that PSS send out pre-adverse and adverse action letters on Customer's behalf for an additional fee.

**N. General Provisions**

Any ancillary service provided by PSS such as providing or hosting Customer's compliance related forms, including without limitation consumer disclosures, authorizations, and adverse action notices; and background check information forms, resumes, and employment, tenant/rental or other applications, is purely clerical in nature and will be performed by PSS solely on behalf of and for the benefit of the Customer. Customer retains sole responsibility at all times for complying with applicable laws related to these items, whether they are applied or used by Customer or its vendors. All information collected and decisions made, including hiring for employment, hiring for other purposes, renting/leasing, contracting, and site-access decisions, are made solely by the Customer and not by PSS. Customer assumes full responsibility for compliance with all applicable laws and for any hiring for employment, hiring for other purposes, renting/leasing, contracting, and site-access decisions, and will indemnify and hold PSS harmless from any and all claims, losses, damages and any costs (including attorneys fees) that may be related to or arise from the services listed above provided by Customer or its vendors. International, federal, state, and local laws may restrict Customer's use of the information provided and PSS's reporting of certain information, including the type of information and age of information reported.

**4. ACCESS SECURITY REQUIREMENTS**

The Parties acknowledge they must work together to protect the privacy of consumers and reduce unauthorized access to consumer information. Customer agrees to notify its employees that Customer can access consumer information only for the permissible purposes listed in the federal Fair Credit Reporting Act (FCRA) and related state law, and this Agreement. Customer will take reasonable procedures to limit access to the PSS system and protect its account numbers and passwords so that only key personnel employed by Customer know this sensitive information, including not posting this information anywhere in the facility. Customer will change account passwords immediately if a person who knows the password leaves its company or no longer needs to have access due to a change in duties. Customer will restrict the ability to obtain consumer information to as few key personnel as is feasible. Customer will assign each user of its system access software a unique logon password. Customer will not allow any of its users to share a logon password and will immediately notify PSS if any user ceases employment with Customer or otherwise loses PSS system access privileges. PSS reserves the right to unilaterally revoke any user's access rights at its sole discretion. If the Customer hardware upon which PSS system has been accessed, is no longer being used or is being disposed of, or if any password has been compromised or believed to be con p omised in any way, Customer will change its relevant passwords immediately. Customer will not discuss its account number or password by telephone with any unknown caller, even if the caller claims to be an employee of PSS.

Customer will physically locate all terminal devices used to obtain consumer information in a secure location within its facility so that unauthorized persons cannot easily access them, and Customer will turn off and lock all devices or systems used to obtain consumer information. Customer will secure hard copies and electronic files of consumer reports within its facility so that unauthorized persons cannot easily access them. Customer will shred and/or destroy all hard copy consumer information when they are no longer needed, and destroy, erase, and overwrite or scramble electronic files containing consumer information when no longer needed and when applicable regulation(s) permit destruction.

Customer Initials                                          PSS Initials



PROFORMA SCREENING SOLUTIONS SERVICE AGREEMENT – INDEPENDENT CONTRACTOR

## 5. GENERAL PROVISIONS

Customer will not resell, sub-license, deliver, display, publish, or otherwise distribute to any third party any of the consumer information provided by PSS, except as required by law. PSS may assign or transfer this Agreement at any time to a successor in interest. Due to PSS's legal obligations, Customer may not assign or transfer this Agreement in whole or in part to any third party, including without limitation any successor in interest, without the prior written consent of PSS. Customer will promptly notify PSS in writing of any of the following events: change in Customer ownership, merger, acquisition name change, or a material change in nature of Customer's business. If any of the provisions of this Agreement become invalid, illegal, or enforceable in any respect, the validity, legality, and enforceability of the remaining provisions will not in any way be impacted. State of Virginia law will guide the interpretation of this Agreement, if such interpretation is required. Any claim asserted in any legal proceeding by one of the parties against the other will be commenced and maintained in Loudoun County, Virginia, and the Parties hereby consent to such jurisdiction and venue. Any written notice by either Party will be delivered personally by messenger, private mail courier service, or sent by registered or certified mail, return receipt requested, postage prepaid to the addresses listed below. PSS may provide notice of changes to prices, fees, and service descriptions and service availability via email to Customer's primary contact in the PSS system and by posting such changes on a PSS website.

This Agreement will be construed as if it were jointly prepared. This Agreement constitutes all conditions of service, present and future, and supersedes any and all prior negotiations or agreements, oral or written, between PSS and Customer, and represents the entire agreement between the Parties regarding the subject matter hereof. There are no third-party beneficiaries to this Agreement. Changes to these conditions may be made only by mutual written consent of an authorized representative of Customer and an officer of PSS. The headings of each section will have no effect upon the construction or interpretation of any part of this Agreement.

## 6. CONFIDENTIALITY

Neither Party will reveal, publish, or otherwise disclose any of the other Party's Confidential Information to any third party without the prior written consent of the other Party. "Confidential Information" means any proprietary or secret data, sales or pricing information, and information relating to the other Party's operations, employees, contractors, vendors, products or services, and customers. This information will be kept confidential at all times during the term of this Agreement, and continuing for five (5) years after receipt of any Confidential Information. Notwithstanding anything to the contrary herein, in no event will PSS be required to destroy, erase, or return any consumer information, including without limitation consumer reports and investigative consumer reports, in PSS's files, all of which PSS will maintain as a consumer reporting agency in strict accordance with all applicable federal, state, and local laws.

## 7. INDEPENDENT CONTRACTOR

The relationship of the Parties created by this Agreement is that of independent contractor and not that of employer/employee, principal/agent, partnership, joint venture, or representative of the other. Except as authorized hereunder, neither Party will represent to third parties that it is the employer, employee, principal, agent, joint venture, or partner with, or representative of the other Party.

## 8. PAYMENT TERMS

Customer will pay nonrefundable fees and other charges and costs for the consumer information provided to Customer. Any pricing for PSS services provided herein does not include any applicable access fees, surcharges, and other fees levied by federal, state, county, local, and other governmental agencies, public and private educational institutions, third-party education verification services, employers, third-party employment verification services, credentialing agencies and entities, third-party credential verification services, drug test collection sites, and other information sources; and that Customer is responsible for paying any and all applicable access fees to PSS. Current access fees, surcharges, and other fees levied by federal, state, county, local, and other governmental agencies are attached hereto. All pricing, access fees, surcharges, other fees, and service offerings, service availability, and service descriptions are subject to change without prior notice. PSS will provide prior notice whenever feasible. Customer is responsible for paying any applicable local, state, federal, or international taxes on services procured from PSS.

Payment terms are net thirty (30) days from invoice date. At PSS's option, payments not received thirty (30) days after invoice date

Customer Initials                    PSS Initials



may cause the account to be placed on temporary suspension, with no additional request or procurement order being processed until the balance due is paid in full or other arrangements have been made in writing with PSS's Accounts Payable Department. All invoices are deemed final and complete if no adjustments are requested within ten (10) days of invoice date. Accounts with invoices thirty (30) days or more past due will be assessed an interest charge of the lesser of 1.5 % per month, or the maximum amount allowed by applicable law. A $50.00 fee will be assessed for all returned checks. If the account goes to collection, Customer will pay all collection expenses, including attorneys' fees and court costs. The providing of Customer credit card information and electronic submission of it to PSS represents a legal authorization to debit the card for the orders placed and for non-payment per the thirty (30) day payment term. Any account that remains inactive for a period of twelve (12) months will be deemed inactive and may be terminated and closed at PSS's sole discretion.

## 9. WARRANTIES, REMEDIES, AND LIMITATION OF LIABILITY

PSS OBTAINS THE CONSUMER INFORMATION REPORTED FROM VARIOUS THIRD PARTY SOURCES "AS IS", AND THEREFORE IS PROVIDING THE INFORMATION TO CUSTOMER "AS IS". PSS MAKES NO REPRESENTATION OR WARRANTY WHATSOEVER, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR PARTICULAR PURPOSE, OR IMPLIED WARRANTIES ARISING FROM THE COURSE OF DEALING OR A COURSE OF PERFORMANCE WITH RESPECT TO THE ACCURACY, VALIDITY, OR COMPLETENESS OF ANY CONSUMER INFORMATION, CONSUMER REPORT, AND/OR INVESTIGATIVE CONSUMER REPORT, THAT THE INFORMATION PROVIDED WILL MEET CUSTOMER'S NEEDS, OR WILL BE PROVIDED ON AN UNINTERRUPTED BASIS; PSS EXPRESSLY DISCLAIMS ANY AND ALL SUCH REPRESENTATIONS AND WARRANTIES.

PSS WILL NOT BE LIABLE TO CUSTOMER FOR DAMAGES, AND CUSTOMER HEREBY RELEASES PSS FROM ANY LIABILITY FOR DAMAGES ARISING UNDER ANY THEORY OF LEGAL LIABILITY TO THE FULLEST EXTENT THAT CUSTOMER MAY LEGALLY AGREE TO RELEASE PSS FROM LIABILITY FOR SUCH DAMAGES, PROVIDED HOWEVER, THAT CUSTOMER DOES NOT RELEASE PSS FROM ANY LIABILITY ARISING SOLELY FROM THE WILFUL MISCONDUCT OR GROSS NEGLIGENCE OF PSS (UNLESS ATTRIBUTED OR IMPUTED TO PSS BY REASON OF ANY ACT OR OMISSION OF CUSTOMER WHETHER AS AN AGENT OF PSS OR OTHERWISE). IN THE EVENT PSS IS LIABLE TO CUSTOMER FOR ANY MATTER ARISING UNDER OR RELATING TO THIS AGREEMENT, WHETHER ARISING IN CONTRACT, EQUITY, TORT OR OTHERWISE (INCLUDING WITHOUT LIMITATION ANY CLAIM FOR NEGLIGENCE), THE AMOUNT OF DAMAGES RECOVERABLE AGAINST PSS FOR ALL SUCH MATTERS WILL NOT EXCEED, IN THE AGGREGATE, THE AMOUNT PAID TO PSS BY CUSTOMER FOR THE SERVICE TO WHICH A GIVEN CLAIM RELATES PROVIDED PURSUANT TO THIS AGREEMENT, AND RECOVERY OF THE AMOUNT IS CUSTOMER'S SOLE AND EXCLUSIVE REMEDY HEREUNDER. IN THE EVENT PSS IS LIABLE TO CUSTOMER FOR ANY MATTER RELATING TO THIS AGREEMENT, WHETHER ARISING IN CONTRACT, EQUITY OR TORT (INCLUDING WITHOUT LIMITATION ANY CLAIM FOR NEGLIGENCE), AND IN ADDITION TO ANY OTHER LIMITATION OF LIABILITY OR REMEDY SET FORTH IN THIS AGREEMENT, THE AMOUNT OF DAMAGES RECOVERABLE AGAINST PSS WILL NOT INCLUDE ANY AMOUNTS FOR INDIRECT OR CONSEQUENTIAL DAMAGES, INCLUDING LOST PROFITS, LOST INCOME, LOST SAVINGS, OR FOR ANY AMOUNTS WITH RESPECT TO CLAIMS AGAINST PSS.

CUSTOMER WILL INDEMNIFY, DEFEND, AND HOLD HARMLESS PSS FROM AND AGAINST ANY AND ALL CLAIMS, SUITS, PROCEEDINGS, DAMAGES, COSTS, EXPENSES (INCLUDING, WITHOUT LIMITATION, REASONABLE ATTORNEYS' FEES AND COURT COSTS) BROUGHT OR SUFFERED BY ANY THIRD PARTY ARISING OR RESULTING FROM, OR OTHERWISE IN CONNECTION WITH, ANY BREACH BY CUSTOMER OF ANY OF ITS REPRESENTATIONS, WARRANTIES, OR AGREEMENTS IN THIS AGREEMENT OR ITS NEGLIGENCE OR WILLFUL MISCONDUCT.

PSS does not guarantee Customer's compliance with any applicable laws in its request for or use of consumer information provided by PSS or any other source of consumer information, and does not provide legal or other compliance related services upon which Customer may rely in connection with the consumer information provided. Any conversation or communication with a PSS representative regarding any consumer information provided or offered by PSS, or any other matter, are not to be considered a legal opinion. PSS does not render any opinions, legal or otherwise, regarding consumer information, consumer reports, investigative consumer reports, a consumer, or whether a consumer should be hired, rented/leased to, or otherwise engaged in any relationship or transaction; and that Customer retains final responsibility for the verification of identity and decision concerning status or fitness of

Customer Initials                    PSS Initials



consumer. PSS recommends Customer consult with its own legal counsel regarding Customer's requests for and use of consumer information, and Customer's reliance on the consumer information reported, for each of Customer's intended purposes.

**TALX Corporation ("TALX"), a Provider of Equifax Employment Information and Verification Services ("EVS")**
Customer recognizes that TALX does not guarantee the accuracy or completeness of EVS and Customer releases TALX and TALX's agents, employees, affiliated credit reporting agencies and independent contractors from any liability, including negligence, in connection with the provision of EVS and from any loss or expense suffered by Customer resulting directly or indirectly from EVS. PSS covenants not to sue or maintain any claim, clause of action, demand, cross-action, counterclaim, third-party action or other form of pleading against TALX, TALX's agents, employees, affiliated credit reporting agencies, or independent contractors arising out of or relating in any way to the accuracy, validity, or completeness of any EVS. Customer agrees to hold all its agents harmless on account of any expenses or damage arising or resulting from the publishing or other disclosure of EVS Employment information by Customer, its employees or agents.

**TransUnion**
Customer recognizes that TransUnion does not guarantee the accuracy or completeness of its reports and Customer releases TransUnion and its agents, employees, affiliated credit reporting agencies and independent contractors from any liability, including negligence, in connection with its services and from any loss or expense suffered by Customer resulting directly or indirectly from the applicable services. PSS covenants not to sue or maintain any claim, clause of action, demand, cross-action, counterclaim, third-party action, or other form of pleading against TransUnion, its agents, employees, affiliated credit reporting agencies, or independent contractors arising out of or relating in any way to the accuracy, validity, or completeness of any reports. Customer agrees to hold all its agents harmless on account of any expenses or damage arising or resulting from the publishing or other disclosure of reports by Customer, its employees or agents.

**Experian**
Customer recognizes that Experian does not guarantee the accuracy or completeness of its reports and Customer releases Experian and its agents, employees, affiliated credit reporting agencies and independent contractors from any liability, including negligence, in connection with its services and from any loss or expense suffered by Customer resulting directly or indirectly from the applicable services. PSS covenants not to sue or maintain any claim, clause of action, demand, cross-action, counterclaim, third-party action, or other form of pleading against Experian, its agents, employees, affiliated credit reporting agencies, or independent contractors arising out of or relating in any way to the accuracy, validity, or completeness of any reports. Customer agrees to hold all its agents harmless on account of any expenses or damage arising or resulting from the publishing or other disclosure of reports by Customer, its employees.

**10. TERM AND TERMINATION**

The term of this Agreement will begin on the Effective Date as defined in the first paragraph of this Agreement and will be in effect for two (2) years. This Agreement will renew automatically for one (1) year each year on the anniversary of the Effective Date ("Renewal Date"), unless terminated in writing by either Party at least sixty (60) days prior to a Renewal Date. Customer will use PSS as its sole and exclusive provider of the services subject to this Agreement.

In addition to any and all other rights a Party may have available according to law, if a Party defaults by failing to perform any provision, term, or condition of this Agreement, the other Party may terminate this Agreement by providing written notice to the defaulting Party. Such notice will describe with sufficient detail the nature of the other Party's default. The Party receiving such notice will have fifteen (15) days from the receipt of such notice ("Cure Period") to cure the default(s). Unless waived by Party providing notice, the failure to cure the default(s) within such time period will result in the automatic termination of this Agreement. PSS may suspend Customer's ability to request or make a procurement order for consumer information during any applicable Cure Period. PSS may terminate or revise the provisions of this Agreement immediately upon written notice if Customer defaults on any of its obligations relating to legal compliance, the protection of consumer information, access to the PSS system or data security; if there is a material change in legal requirements that adversely affects this Agreement; if Customer is the debtor in a bankruptcy action or in an assignment for the benefit of creditors; or if Customer undergoes a change in ownership. Termination of this Agreement by either party does not release Customer from its obligation to pay for

Customer Initials                    PSS Initials



services rendered or other responsibilities and agreements made.

## 11. GOVERNING LAW AND VENUE

This Agreement will be governed by the laws of the Commonwealth of Virginia without reference to its conflict of law principles. PSS and Customer hereby consent to the exclusive jurisdiction of any state or federal court located within the County of Loudoun, State of Virginia. The Parties waive any defense of *forum non conveniens* and irrevocably agree to be bound by any judgment rendered in accordance with this Agreement. Customer agrees to accept service by certified mail, return receipt requested, mailed to the address indicated below or Customer's last known address, if different, such service being hereby acknowledged by Customer to be effective and binding service in every respect. Nothing herein will affect the right to serve process in any other manner permitted by law.

## 12. FORCE MAJEURE

PSS is not responsible for any events or circumstances beyond its control (e.g., including without limitation war, riots, embargoes, strikes, and/or Acts of God) that prevent PSS from meeting its obligations under this Agreement.

## 13. SEVERABILITY

If any term or condition of this Agreement, or the application thereof to any person or circumstance, is held invalid or unenforceable under any applicable law, such invalidity or unenforceability will not affect any other provision of this Agreement that can be given effect without the invalid or unenforceable provision, or the application of such provision to other persons or circumstances, and, to this end, the terms and conditions of this Agreement are severable.

## 14. EXECUTION

This Agreement may be executed in any number of counterparts, each of which will be deemed an original, but all of which taken together will constitute one and the same instrument. A signature on a copy of this Agreement received by either Party by facsimile, email or some other electronic means, is binding upon the other Party as an original and the Parties will treat any such copy as a duplicate original.

*SIGNATURE PAGE FOLLOWS*

PSS Service Agreement v.20170620 – Independent Contractor

Customer Initials _____          PSS Initials _____



**SIGNATURE**

I certify that I am duly authorized to execute this Agreement on behalf of the Party for whom I sign. Further, on behalf of the Party for whom I sign, I certify that the above statements are true and correct, and I acknowledge and agree to all of the terms and conditions set forth herein.

*On Behalf of Customer:*

Authorized Signature        6/15/20    *Penny B McCleskey*       Title

                     Date       Name of Signer

LSO — Lone Star Holdings, LLC

Organization Name ("Customer")

6500 River Place Blvd, Ste 105 Bld 2, Austin, TX 78730

Street Address, City, State, Zip

*On Behalf of PSS:*

Authorized Signature        6/29/20     Phillip A. Smith       VP

                     Date       Name of Signer       Title

Proforma Screening Solutions (PSS)

125 East Hirst Road, Ste 2C, Purcellville, VA 20132



**Addendum A**

**Documents Required Before Requesting
Consumer Credit Report Information**

Before Customer will be allowed to access consumer credit report information, PSS requires that Customer provide one (1) of the following (if Customer is not publicly traded):

1. Business license status from a government web site (please include entire web page print out);

2. Business license, copy or documented verification;

3. Documented corporation verification with state or federal government;

4. Copy of Articles of Incorporation with proof of filing;

5. State and/or federal tax records originating from the state or federal government;

6. FDIC Certification; or

7. 501(c)(3) certificate for non-profit organizations.

If Customer is a publicly traded company, the following items are acceptable methods for verifying that the Customer is a bona fide entity:

1. Documentation of ticker symbol information from trading website;

2. Certified copy of audited annual or quarterly statements submitted to the SEC.

Customer Initials                                                    PSS Initials



# Addendum B
# Fee Schedule

**"Pay-As-You-Go" Criminal Record and Sex Offender Registry Services:**

If Customer orders any "Pay-As-You-Go" County Criminal Record Search, Statewide Criminal Record Search, Federal Criminal Check, CrimNet National Criminal Record Check, or Sex Offender Registry Check, Proforma Screening Solutions will search the provided name and provided current jurisdiction of residence. Additional names and jurisdictions of residence for the past seven years developed through the Social Security Number Locator service will also be searched and billed at the applicable additional service rate. Any applicable third party information source fees are additional.

**"Provided Only" Criminal Record and Sex Offender Registry Services:**

If Customer orders any "Provided Name, Provided Jurisdiction, Only" County Criminal Record Search, Statewide Criminal Record Search or Federal Criminal Check, or any "Provided Name, Only" CrimNet National Criminal Record Check, or Sex Offender Registry Check, Proforma Screening Solutions will search the provided name and provided current jurisdiction of residence, only. Additional names and jurisdictions of residence contained in the Social Security Number Locator service will not be searched. Any applicable third party information source fees are additional.

**"Flat Rate" Criminal Record and Sex Offender Registry Services:**

If Customer orders any "Flat Rate" County Criminal Record Search, Statewide Criminal Record Search, Federal Criminal Search, CrimNet National Criminal Record Check, or Sex Offender Registry Check, Proforma Screening Solutions will search the provided name and provided current jurisdiction of residence, and jurisdictions of residence for the past seven years developed through the Social Security Number Locator service at the flat rate quoted, regardless of the number of searches conducted. Any applicable third party information source fees are additional.

**CrimNet National Criminal Record Database Service:**

To ensure legal compliance and the accuracy and completeness of the reported information, any CrimNet National Criminal Record Database records found will be verified with a search of the primary source (e.g., county court records) prior to reporting of the record. Any such primary source searches conducted will be billed at the applicable additional service rate. Any applicable third party information source fees are additional.

**Third Party Information Source Fees:**

Package and service prices do not include any third-party information source access fees, including without limitation fees charged by courts, law enforcement agencies, DMV's, other government institutions, other information sources, employers, educational institutions, TALX/The Work Number, The National Student Clearinghouse, third party collection sites, etc. Current state MVR, law enforcement repository, and court fees are provided in the attached schedules. Third party information source fees are outside of the control of Proforma Screening Solutions and are subject to change without notice.

Customer Initials                                   PSS Initials



## Addendum B

## Fee Schedule (continued)

**Data Entry Fee:**

In the event that Proforma Screening Solutions is requested to enter the consumers background screening application information into the background screening platform a data entry charge of $4.35 per application will be billed.

**Employment Credit Report Service On-Site Site Inspection Fee:**

To ensure legal and contractual compliance, Customers requesting access to Credit Reports will be subject to a physical site inspection performed by a third-party partner of Proforma Screening Solutions. An On-Site Inspection Fee of $75 is also applicable.

**File Order Fee:**

In the event that it is necessary to order a file from the any court or law enforcement agency a $35.00 minimum File Order Fee is applicable.

**Fee:** Account Set Up $150.00

<u>**Client Direct > CBC & MVR Contractor Package:**</u>          **Flat Rate $29.00 (Plus Third-Party Fees)**

**SSN Locator/Trace** - With Name and Address History & Verification
**County Criminal Court Records** (Felony & Misdemeanor) – (7 Year Address History) Name Provided, Current Jurisdiction, With All County Jurisdictions Within 7 Years from SSN Locator/Trace

**CrimNet** – Multi-State Criminal Record Search, With National Sex Offender – Name Provided

**MVR - DMV Driving Records**

**Standard 10 Panel Urinalysis Drug Test - $30.50** (LabCorp & Quest) Electronic Scheduling

**5 Panel DOT Urinalysis Drug Test - $31.50** (LabCorp & Quest) Electronic Scheduling

Recommended Additional Service:

**Federal Criminal Court Search - $7:00**

_____          _____
Customer Initials                    PSS Initials



## Customer Application

### Company Information

**Company Name:** LSO

**Legal Entity Name:** Lone Star Holdings Inc

**Address 1:** 6500 River Place Blvd, Ste 105 Bldg 2 Austin, TX 78730

**Address 2:**

**City:** Austin  **State:** TX  **ZIP Code:** ~~22602~~ 78730

**Phone:** 512 873-8067  **E-Mail:** EBERNADINO@LSO.COM  **Fax:**

### Primary Contact Information

**Name:** Mike Boyzwich

**Title:** Chief Operating Officer

**Phone:** 972-571-9530  **E-Mail:** mboyzwick@LSO.com  **Fax:**

**Address (if different from above):**

**City:**  **State:**  **ZIP Code:** 22633

### Invoice / Billing Contact

**Name:** Robert McDonald, AP Supervisor,

**Title:** AP Supervisor

**Phone:** 512 873 8067  **E-Mail:** rmcDonald@LSO.com,  **Fax:**

**Remittance Address:** 6500 River Place Blvd

**City:** Austin  **State:** TX  **Zip Code:** 78730

### Administrative User (will have administrative rights)

**First Name:** ERWIN  **Last Name:** BERNADINO

**Position:** Compliance  **E-Mail:** EBERNADINO@LSO.com

### System Users (will place orders and receive completed report notifications)

| First Name: | Last Name: | E-mail: |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

### For Proforma Screening Solutions Only

**E-Authorize** ☐ yes / ☐ no    **Drug Testing** ☐ ECOC / ☐ DOT / ☐ Paper COC    **PA Drivers** ☐ yes / ☐ no