UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| AccuSource HR, Inc., <br> *Plaintiff*, <br><br> v. <br><br> Lone Star Holdings, LLC d/b/a LSO and/or Lone Star Overnight; Lone Star Overnight, LLC d/b/a LSO, <br> *Defendants*. | § <br> § <br> § <br> §    Case No. 1-24-CV-00303-JRN <br> § <br> § <br> § <br> § |

**ORDER**

Before the Court is Plaintiff AccuSource HR, Inc.'s Motion for Final Default Judgment against Defendants Lone Star Overnight, LLC, and Lone Star Holdings, LLC. Dkt 28. After reviewing the motion and the relevant law, the Court finds that the motion should be granted.

**I.   BACKGROUND**

In June 2020, AccuSource entered into a service agreement with Lone Star Overnight.[1] Under the agreement, AccuSource would provide information about current and prospective LSO employees, including consumer information, consumer reports, and background screenings. In return, LSO agreed to "pay nonrefundable fees and other charges and costs for the consumer information provided" within "thirty (30) days from invoice date." If LSO failed to pay an invoice on time, it would be "assessed an interest charge of the lesser of 1.5% per month, or the maximum

---

[1] AccuSource's predecessor-in-interest, LFL Enterprises LLC d/b/a Proforma Screening Solutions, executed the agreement.

amount allowed by applicable law." If LSO's account went to collection, it would have to "pay all collection expenses, including attorneys' fees and court costs."

AccuSource provided all services to LSO as contemplated by the agreement, but LSO failed to pay several invoices. As of July 31, 2024, LSO owed AccuSource $313,290.80 in unpaid invoices and $105,575.31 in interest, totaling $418,866.11. On May 29, 2024, AccuSource filed its first amended complaint against Lone Star Overnight, LLC and Lone Star Holdings, LLC,[2] alleging breach of contract, unjust enrichment, and promissory estoppel. Despite being served, the defendants have not answered or otherwise responded to AccuSource's suit. The clerk has entered default against both defendants, and AccuSource now moves for the entry of default judgment.

## II.  LEGAL STANDARD

A default occurs "when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules." *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). If this failure is "shown by affidavit or otherwise," the clerk of the court must enter the defendant's default. FED. R. CIV. P. 55(a). By defaulting, the defendant "admits the plaintiff's well-pleaded allegations of fact." *Nishimatsu Const. Co. v. Hous. Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). But the plaintiff "is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir.

---

[2] "Lone Star Holdings, LLC" is identified as the "legal entity name" in the customer application attached to parties' agreement. LSO also executed the agreement through Lone Star Holdings, LLC.

1996). Instead, the entry of default judgment is committed to the district court's discretion. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977).

Over time, courts have developed a three-step process for determining whether to enter a default judgment. *RLI Ins. Co. v. 2 G Energy Sys.*, LLC, 581 F. Supp. 3d 817, 823 (W.D. Tex. 2020). The first step is to consider whether the entry of default judgment is procedurally warranted. *Id.* Factors relevant to this consideration include:

> (1) whether material issues of fact are at issue, (2) whether there has been substantial prejudice, (3) whether the grounds for default are clearly established, (4) whether the default was caused by a good faith mistake or excusable neglect, (5) the harshness of a default judgment, and (6) whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

Next, the court must examine the substantive merits of the plaintiff's claims to determine whether there is a sufficient basis in the pleadings for the judgment. *RLI*, 581 F. Supp. 3d at 823. For this inquiry, courts "draw meaning from the case law on Rule 8, which sets forth the standards governing the sufficiency of a complaint." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015). Under Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "The factual allegations in the complaint need only 'be enough to raise a right to relief

above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Wooten*, 788 F.3d at 498 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although detailed factual allegations are not required, "the pleading must present 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The final step is to determine what form of relief, if any, the plaintiff should receive. *RLI*, 581 F. Supp. 3d at 823; *see also L. Funder, L.L.C. v. Munoz*, 924 F.3d 753, 761 (5th Cir. 2019) ("A default judgment establishes the defendant's liability but not the quantity of damages."). Generally, damages will not be awarded without an evidentiary hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). But if the damages can be determined with certainty by reference to the pleadings and supporting documents, a hearing is unnecessary. *See James v. Frame*, 6 F.3d 307, 310–11 (5th Cir. 1993).

### III.   DISCUSSION

#### A. Procedural Requirements

As to the first step, the Court finds that the entry of default judgment is procedurally warranted. First, no material facts are in dispute because the defendants have not filed an answer or any responsive pleadings. *See Nishimatsu*, 515 F.2d at 1206 ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact."). Second, the defendants' failure to respond threatens to halt the

adversarial process, prejudicing AccuSource's interests. *RLI*, 581 F. Supp. 3d at 824. Third, the grounds for default are clearly established because the defendants have not responded to the complaint, the entry of default, or the motion for default judgment. *Id.* Fourth, nothing suggests that the defendants' default was caused by a good faith mistake or excusable neglect. Fifth, the defendants' failure to appear mitigates the harshness of a default judgment. *J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 814 (N.D. Tex. 2015). Finally, the Court does not anticipate—based on the current record—that it would set aside this default judgment on the defendants' motion.

### B. Substantive Requirements

Turning to the merits, the Court finds that AccuSource's breach-of-contract claim provides a sufficient basis for the entry of default judgment. Under Texas law, a plaintiff asserting a breach-of-contract claim must prove that "(1) a valid contract exists; (2) the plaintiff performed or tendered performance as contractually required; (3) the defendant breached the contract by failing to perform or tender performance as contractually required; and (4) the plaintiff sustained damages due to the breach." *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019).

AccuSource alleges that (1) the agreement between the parties is a valid and enforceable contract; (2) AccuSource performed all its duties under the agreement by providing the services requested by the defendants; (3) the defendants breached their obligations under the agreement by failing to pay AccuSource for its services; and (4)

AccuSource has suffered damages as a result. These allegations raise a right to relief above the speculative level.

### C. Relief

#### 1. Damages

Having concluded that the pleadings provide a sufficient basis for the entry of default judgment, the only remaining issue to address is damages. AccuSource first requests $418,866.11 in unpaid invoices plus the contractual 1.5% interest. In support of this request, AccuSource provides a declaration from Todd Brown, AccuSource's Chief Financial Officer, detailing the amount of open balances and interest the defendants owe. The Court finds that AccuSource has presented sufficient evidence to establish that it is entitled to $418,866.11 in damages.

#### 2. Attorneys' Fees

Next, AccuSource requests $42,239.50 in attorneys' fees. In the Fifth Circuit, "attorneys' fees are calculated by the lodestar method—multiplying the number of hours reasonably expended by an appropriate hourly rate." *Cruz v. Maverick Cnty.*, 957 F.3d 563, 574 (5th Cir. 2020). After the lodestar method is applied, a court may enhance or decrease the amount of fees based on the factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989). *Id.* "Plaintiffs seeking attorney's fees have the burden of showing the reasonableness of the hours billed and that the attorneys exercised billing judgment." *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013).

To support its request for attorneys' fees, AccuSource submitted a declaration from its attorney, Adam Buck. Buck explained that his law firmed billed 79.20 hours on this matter, incurring a total of $42,239.50 in fees. Buck also provided a detailed breakdown of the hours each professional billed, the rate at which they billed, and the type of work they performed. According to Buck, the principal partner, associate, and paralegal billed at rates of $640, $490, and $270 respectively. Buck declares that given the education, experience, and expertise of the professionals rendering services, "the rates charged are reasonable for this type of proceeding for a case of this nature." The Court agrees and concludes that AccuSource's should be awarded $42,239.50 in attorneys' fees. The Court also concludes that, based on a review of the *Johnson* factors, no adjustment is necessary.

### 3. Costs

AccuSource further requests $1,568.04 in costs, comprising $605 in filing fees, $475.50 in messenger costs, $190 for professional service, $109.54 in miscellaneous costs, $95 in overnight delivery charges, and $93 in copy expenses. The filing fees and copy expenses are recoverable under 28 U.S.C. § 1920, but the professional service cost, overnight delivery charges, and messenger costs are not. *See Callier v. Tip Top Cap. Inc.*, No. EP-23-CV-437-KC, 2024 WL 1637535, at *3 (W.D. Tex. Apr. 16, 2024) ("[C]osts for private process servers are not recoverable, absent exceptional circumstances." (quotations omitted)); *Stoffels v. SBC Commc'ns, Inc.*, No. SA-05-CV-0233-XR, 2012 WL 2122191, *3 (W.D. Tex. June 11, 2012) ("Costs for mail services have consistently been disallowed on the grounds that these expenses are only for the

convenience of the attorney."). The miscellaneous costs are likewise not recoverable. *See* 28 U.S.C. § 1920. Thus, AccuSource is only entitled to $698 in costs.

### 4. Post-judgment Interest

AccuSource's final request is for post-judgment interest at a rate of 1.5%. Under 28 U.S.C. § 1961(a), post-judgment interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield[.]" Nevertheless, parties are free to stipulate to a different rate, provided it is "consistent with state usury and other applicable laws." *Hymel v. UNC, Inc.*, 994 F.2d 260, 266 (5th Cir.1993) (quotations omitted). To do so, "they must specifically contract around the general rule that a cause of action reduced to judgment merges into the judgment and the contractual interest rate therefore disappears for post-judgment purposes." *Tricon Energy Ltd. v. Vinmar Int'l, Ltd.*, 718 F.3d 448, 457 (5th Cir. 2013) (quoting *In re Riebesell*, 586 F.3d 782, 794 (10th Cir. 2009)).

In this case, the parties' agreement provides that "[a]ccounts with invoices thirty (30) days or more past due will be assessed an interest charge of the less of 1.5% per month, or the maximum amount allowed by applicable law." While this provision dictates the interest rate on overdue invoices, it does not state that the rate applies to post-judgment interest. Because the parties did not *specifically* contract around the general rule regarding merger and post-judgment interest, the Court will award post-judgment interest under 28 U.S.C. § 1961(a). *See Maxim Com. Cap., LLC*

*v. Swiftwater Car Wash*, LLC, No. 5:23-CV-00761-OLG, 2024 WL 2482867, at *3 n.9 (W.D. Tex. Apr. 29, 2024).

## IV. CONCLUSION

Accordingly, the Court **GRANTS** AccuSource's motion for default against Lone Star Overnight, LLC, and Lone Star Holdings, LLC. The Court **AWARDS** AccuSource (1) $418,866.11 in damages, (2) $42,239.50 in attorneys' fees, (3) $698 in costs, and (4) post-judgment interest under 28 U.S.C. § 1961(a).

Signed this 8th day of October 2024.

JAMES R. NOWLIN
SENIOR U.S. DISTRICT JUDGE